# United States District Court
# Western District Of North Carolina
# Charlotte Division

FILED
CHARLOTTE, N. C.

DEC 2 1999

U. S. DISTRICT COURT
W. DIST. OF N. C.

Kelly J. McWhirter,

        Plaintiff(s),           JUDGMENT IN A CIVIL CASE

vs.           3:99CV216MU

TeleCheck Services, Inc.,

        Defendant(s).

DECISION BY COURT. This action having come before the Court and a decision has been rendered.

IT IS ORDERED AND ADJUDGED that judgment is hereby entered in accordance with the Court's December 1, 1999 Order.

December 1, 1999

        FRANK G. JOHNS, CLERK

        By: _____
        Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:99CV216-MU

| | | |
|---|---|---|
| KELLY J. MCWHIRTER, on behalf of herself and all others similarly situated, ) ) ) | | |
| Plaintiff, ) ) | | |
| v. ) ) | ORDER | |
| TELECHECK SERVICES, INC., ) ) | | |
| Defendant. ) ) | | |

FILED
CHARLOTTE, N. C.

DEC 1 1999

U. S. DISTRICT COURT
W. DIST. OF N. C.

THIS MATTER comes before the Court upon Defendant's Motion to Dismiss, filed July 1, 1999, Plaintiff's Motion in Opposition to Defendant's Motion to Dismiss, filed August 2, 1999, and Defendant's Reply, filed August 27, 1999.

Certain facts in this case are not in dispute. Defendant is in the check guaranty business. Defendant contracted with Presbyterian Healthcare Associates ("PHA") to provide check authorization to PHA when a customer pays by check. If Defendant recommends the acceptance of a check and that check is later dishonored, Defendant purchases the check from PHA for the full face amount and then decides whether to pursue payment on the check.

On September 11, 1998, Plaintiff wrote a check to PHA to pay for healthcare services. A sign was posted at PHA stating that Defendant charges a $25.00 fee on returned checks. This sign was smaller than 8 by 11 inches. Thereafter, Plaintiff's check was returned for insufficient funds. Defendant purchased the check from PHA and, on October 12, 1998, mailed a letter on its own behalf to Plaintiff in an effort to collect both the face amount of the check and a $25.00 returned check fee. This letter set forth separately the amount of the returned check and the

amount of the returned check fee. Plaintiff did not contest these amounts; rather, she paid both the amount of the returned check and the check fee.

Plaintiff filed the instant case as a class action against Defendant, arguing that Defendant was not entitled to charge the $25.00 return check fee because of Defendant's alleged failure to comply with N.C.G.S. § 25-3-506. Section 25-3-506 permits a person who accepts a check in payment for goods or services to charge and collect a processing fee, not to exceed twenty-five dollars ($25.00), for a check returned for insufficient funds *only if* that person complies with certain sign posting requirements. In order to comply with these requirements, a sign must, *inter alia*, be no smaller than 8 by 11 inches. Because Defendant allegedly failed to satisfy this requirement, Plaintiff claims that Defendant's imposition of the $25.00 service charge is illegal under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et. seq. ("FDCPA" or the "Act") and North Carolina Debt Collection Laws, N.C.G.S. § 58-70-1 et.seq., N.C.G.S. § 75-50 et. seq., and N.C.G.S. § 75-1.1 et. seq.

In support of its Motion to Dismiss, Defendant first argues that Plaintiff's claims fail as a matter of law because Plaintiff's returned check was not a debt. Therefore, Defendant argues that it is not subject to the FDCPA, N.C.G.S. § 58-70-1 et.seq., or N.C.G.S. § 75-50 et. seq.

The FDCPA prohibits a debt collector from using certain abusive practices to collect debt. Section 1692a(5) of the FDCPA defines "debt" as follows:

> Any obligation or alleged obligation to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes whether or not such obligation has been reduced to judgment.

The Fourth Circuit has not ruled on the issue of whether a dishonored check is a debt within the FDCPA, and there is some disagreement among the other circuits with regard to this

question. Defendant cites Zimmerman v. HBO Affiliate Group, 834 F.2d 1163 (3d Cir. 1987) for the proposition that a dishonored check is not a debt within the FDCPA. In Zimmerman, the Third Circuit Court of Appeals, finding that the illegal interception of signals was not a consensual transaction and therefore did not fall within the FDCPA's definition of debt, held that the "type of transaction which may give rise to a 'debt' as defined in the FDCPA, is the same type of transaction as is dealt with in all other subchapters of the Consumer Credit Protection Act, i.e., one involving the *offer or extension of credit to a consumer.*" Id. at 1168 (emphasis added). Applying this rationale to the present issue, Defendant argues that Plaintiff's check, a "negotiable instrument akin to a cash payment" (Defendant's Motion, p. 5), was not a credit arrangement and therefore does not constitute a debt under Zimmerman. Defendant cites Mabe v. G.C. Services Ltd. Parnership, 32 F.3d 86 (4th Cir. 1994), for the proposition that the Zimmerman definition of debt applies in the Fourth Circuit. In Mabe, the Fourth Circuit, citing Zimmerman, noted that "[a]t least two courts of appeals... have held that the type of 'transaction' which creates a 'debt' under the FDCPA is one in which 'a consumer is offered or extended the right to acquire money, property, insurance, or services which are primarily for household purposes and to defer payment.'" Id. at 88. The Fourth Circuit went on to hold that "child support obligations do not qualify as debts under the FDCPA because they were not incurred to receive consumer goods or services." Id.

In factually similar situations, the Seventh, Eighth, and Ninth Circuits have all held that a returned check is a debt within the scope of the FDCPA. See Bass v. Stolper, Koritzinsky, Brewster & Neider, S.C., 111 F.2d 1322 (7th Cir. 1997); Charles v. Lundgren & Associates, P.C., 119 F.3d 739 (9th Cir. 1997); Duffy v. Landberg, 133 F.3d 1120 (8th Cir. 1998). In Bass, cited with approval in both Charles and Duffy, the Seventh Circuit looked first to the plain

language of the Act, finding "no language in the Act's definition of debt (or any other section of the Act) that mentions, let alone requires, that the debt arise from an extension of credit." Id. at 1325. Rather, the Court found the language to be both expansive and unambiguous, concluding that "as long as the transaction creates an obligation to pay, a debt is created. We harbor no doubt that a check evidences the drawer's obligation to pay for the purchases made with the check, and should the check be dishonored, the payment obligation remains." Id.

The Court then looked to the FDCPA's legislative history and held that the Act's legislative history provides an "unequivocal statement of the drafters' intent on this issue: '[T]he Committee intends that the term debt include consumer obligations paid by check or other non-credit consumer obligations.'" Id. at 1327, citing H.R.Rep. No. 95-131, 95th Cong., 1st Sess. 4 (March 29, 1997). Given both the plain language and the history of the act, the Seventh Circuit declined the appellants' suggestion that the Court inject a credit requirement into the definition of debt.

The Defendant's reliance on Mabe in support of its argument that the Fourth Circuit has adopted Zimmerman's "offer or extension of credit" requirement is misplaced. Mabe cites Zimmerman for the proposition that an obligation to pay child support is not a debt under the FDCPA because it was not incurred in exchange for consumer goods or services; therefore, the language of Zimmerman requiring an offer or extension of credit does not control. Unlike Bass, Charles, and Duffy, neither Zimmerman nor Mabe addressed the issue involved in this case. Moreover, as noted in Bass, the Third Circuit in Zimmerman neither considered the plain language of the Act nor examined the legislative history of the Act in arriving at its conclusion regarding the definition of "debt." As this Court finds the reasoning of the Seventh, Eighth, and Ninth Circuits persuasive, the Court hereby declines to follow the Zimmerman definition and

finds that a dishonored check constitutes a debt under the FDCPA. Defendant's Motion to Dismiss based on this argument is therefore denied.

Moreover, as Defendant concedes that N.C.G.S. § 58-70-1 et.seq. and N.C.G.S. § 75-50 et. seq. are patterned after the FDCPA, this Court finds that dishonored checks constitute debt under the North Carolina statutes as well. Defendant's Motion to Dismiss based on its argument that dishonored checks are not debt for purposes of North Carolina law is similarly denied.

The Court next addresses Defendant's claim that Plaintiff's class action allegations are precluded by the express language of N.C.G.S. § 58-70-130. Subsection (b) of that section provides, in relevant part, that "any collection agency which violates . . . this Article with respect to any debtor shall, in addition to actual damages sustained by the debtor as a result of the violation, also be liable to the debtor *only in an individual action* . . .". Plaintiff requests that this Court construe the legislature's alleged failure to expressly bar class actions as an indication that the legislature intended to allow them. However, this Court finds that the plain language of the statute as it currently reads expressly bars class actions.

Plaintiff then claims that even if the Court finds that the recovery of damages under subsection (b) is limited to individual actions, subsection (a) nonetheless permits the Plaintiff to recover actual damages by way of a class action. Subsection (a) provides:

> Any collection agency which violates . . . this Article with respect to any debtor shall be liable to *that debtor* in an amount to the sum of any actual damages sustained by the debtor as a result of the violation.

Again, this Court finds that the plain language of the statute, limiting the collection agency's liability to *that individual debtor*, serves to bar class actions. As such, Defendant's Motion to Dismiss Plaintiff's class action allegations under the Prohibited Practices by Collection Agencies Act, N.C.G.S. § 58-70-130 is granted.

Defendant also asks the Court to dismiss Plaintiff's request for treble damages. Plaintiff acknowledges that both § 58-70-130(c) and § 75-56 of the North Carolina General Statutes prohibit her from recovering treble damages for violations of 75-1.1. Plaintiff, however, asks the Court to allow her claim for treble damages to stand in the event that the Court finds neither § 58-70-90 nor § 75-50 apply but that Defendant's acts are otherwise unfair or deceptive. However, as Defendant correctly notes, Plaintiff's complaint does not allege that Defendant's actions were *otherwise* unfair or deceptive. As Plaintiff concedes that she is not entitled to treble damages under either § 58-70-90 or § 75-50, Defendant's Motion for dismissal of Plaintiff's request for treble damages is hereby granted.

Defendant next argues that it is not subject to the requirements of N.C.G.S. § 25-3-506 upon which Plaintiff bases her claims. Section 25-3-506 provides, in relevant part, as follows:

> A person who accepts a check in payment for goods or services may charge and collect a processing fee, not to exceed twenty-five dollars ($25.00), for a check on which payment has been refused by the payor bank because of insufficient funds or because the drawer did not have an account at that bank if at the time the consumer presented the check to the person, a sign . . . (3) was no smaller than 8 by 11 inches . . .
>
> If a collection agency collects or seeks to collect on behalf of its principal a processing fee as specified in this section in addition to the sum payable of a check, the amount of such processing fee must be separately stated on the collection notice. The collection agency shall not collect or seek to collect from the drawer any sum other than the actual amount of the returned check and the specified processing fee.

All of Plaintiff's claims are based on Defendant's alleged failure to conform its sign to the size requirement. However, Defendant claims that under the plain language of the statute, Defendant is not subject to this requirement. Rather, the language limits the statute's applicability to a "person who accepts a check in payment for goods and services" who intends to charge a fee. Defendant argues that PHA, not Defendant, accepted the check, and therefore

the Defendant is not required to comply with the sign posting requirements. This Court agrees.

Plaintiff argues in response that the later paragraph of the statute concerning collection agencies makes it clear that the sign posting requirements specifically apply when a third party collection agency seeks to collect a processing fee. Accepting Plaintiff's argument that Defendant is, in fact, a collection agency, the Court is not persuaded by Plaintiff's reading of the statute. The plain language of the statute requires only that a collection agency separately state the amount of any processing fee it seeks to collect. If the legislature intended collection agencies to be subject to the sign posting requirement, it would have so stated in the first paragraph of the statute.

Plaintiff's complaint alleges violations of §§ 1692e(2), 1692e(10), and 1692f(1) of the FDCPA. Under § 1692e(2), a debt collector may not falsely represent the character, amount, or legal status of any debt or any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt. Under § 1692e(10), a debt collector may not use any false representation or deceptive means to collect or attempt to collect a debt. Finally, under § 1692f(1), a debt collector may be liable for the use of unfair practices in the collection of any amount, including any interest, fee, charge, or expense incidental to the principal obligation, unless such amount is permitted by law. As the Court finds that the Defendant was not required to comply with the sign posting requirements of N.C.G.S. § 25-3-506, the Defendant was authorized to collect the $25.00 processing fee. As such, the representations made and practices employed by the Defendant in its collection or the processing fee were neither false or misleading nor unfair. Therefore, Plaintiff's claims under the FDCPA are hereby dismissed.

Plaintiff's claims under N.C.G.S. § 58-70-1 et.seq., or N.C.G.S. § 75-50 et. seq. similarly

allege that Defendant used unfair or deceptive means to collect unauthorized fees. Again, as N.C.G.S. § 58-70-1 et.seq. and N.C.G.S. § 75-50 et. seq. are patterned after the FDCPA, Plaintiff's claims under these statutes are also dismissed.

IT IS THEREFORE ORDERED that Defendant's Motion to Dismiss Plaintiff's complaint is hereby GRANTED.

This 30th day of November, 1999.

Graham C. Mullen
GRAHAM C. MULLEN
CHIEF UNITED STATES DISTRICT JUDGE

United States District Court
for the
Western District of North Carolina
December 2, 1999

* * MAILING CERTIFICATE OF CLERK * *

Re: 3:99-cv-00216


True and correct copies of the attached were mailed by the clerk to the following:

    John W. Taylor, Esq.
    Mitchell, Rallings, Singer, McGirt & Tissue
    227 W. Trade St.
    Suite 1800
    Charlotte, NC  28202

    William A. Blancato, Esq.
    McCall, Doughton & Blancato, PLLC
    633 West Fourth St.
    Suite 150
    Winston-Salem, NC  27101


cc:
Judge                          ( )
Magistrate Judge               ( )
U.S. Marshal                   ( )
Probation                      ( )
U.S. Attorney                  ( )
Atty. for Deft.                ( )
Defendant                      ( )
Warden                         ( )
Bureau of Prisons              ( )
Court Reporter                 ( )
Courtroom Deputy               ( )
Orig-Security                  ( )
Bankruptcy Clerk's Ofc.        ( )
Other_____           ( )

Date: 12/2/99

Frank G. Johns, Clerk
By: _____
    Deputy Clerk